G. Lynn Shumway (011714)
shumway@carsafetylaw.com
**SHUMWAY LAW PLLC**
4647 N. 32nd Street, Suite 230
Phoenix, Arizona  85018
Telephone  :  602.795.3720
Facsimile   :  602.795.3728

Brent Ghelfi (011491)
BrentGhelfi@GhelfiLawGroup.com
**GHELFI LAW GROUP, PLLC**
4647 North 32nd Street, Suite 230
Phoenix, Arizona  85016
Telephone  :  602.318.3935

Jay Ciulla (No. 017971)
jay@ciullalawfirm.com
**THE CIULLA LAW FIRM, PLLC**
2025 N. 3rd Street, Suite 165
Phoenix, AZ 85004
Telephone: 602-495-0053
Facsimile: 602-903-6787

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Shunlun Wen**, on behalf of himself and the statutory beneficiaries of Xiaoying Wen, deceased;<br><br>Plaintiffs,<br><br>vs.<br><br>**General Motors LLC**, a Delaware limited liability company;<br><br>Defendant. | No. _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

For his Complaint against Defendant, Plaintiff alleges as follows:

/ / /

/ / /

1

**Parties**

1. Shunlun Wen is an individual. He resides in Chengdu, People's Republic of China.

2. Shunlun Wen is the father of Xiaoying Wen, deceased.

3. Shunlun Wen is also the husband of Dengjun Liu, who is Xiaoying Wen's mother.

4. Shunlun Wen brings this matter on his own behalf and on behalf of the statutory beneficiaries of Xiaoying Wen, including Dengjun Liu.

5. General Motors LLC ("GM") is a Delaware limited liability company. It is one of the largest manufacturers of automobiles in the United States.

6. Upon information and belief, General Motors LLC is a subsidiary of General Motors Company.

7. General Motors LLC designed, manufactured, and distributed the vehicle at issue in this matter, a 2016 Chevrolet Silverado pickup truck, VIN 3GCUKREC8GG227770 (the "Vehicle").

8. General Motors LLC placed the Vehicle into the stream of commerce in the ordinary course of business.

9. Whenever reference is made in this Complaint to any act of General Motors LLC, such allegation shall mean that General Motors LLC did the acts alleged in the Complaint through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

**Jurisdiction and Venue**

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,001.00 and the Plaintiff is completely diverse from Defendant.

11. The acts and omissions giving rise to Plaintiffs' claims occurred within the geographic boundaries of the County of Maricopa in the State of Arizona. Therefore, the

appropriate venue for this action is the United States District Court for the District of Arizona, Phoenix Division, pursuant to 28 U.S.C. §§ 1391(b)(2).

## Background Facts

### A. Xiaoying Wen

12. Xiaoying Wen was born in China.

13. He was a world-class pianist. He was matriculating at Arizona State University at the time of the collision at issue, working toward his doctorate of philosophy (Ph.D.)

14. He was very close to his parents, and planned to return to China following his education to live near them.

### B. The Collision

15. On Thursday, November 16, 2017, at approximately 4:00 p.m., Xiaoying Wen was riding his bicycle eastbound along Vista Del Cerro in Tempe, riding along the south side of the street.

16. He approached the intersection of Vista Del Cerro and Rural Road, an intersection controlled by a traffic signal.

17. Mr. Wen crossed Rural Road using the crosswalk on the south side of the intersection. The walk sign was green for Mr. Wen.

18. Meanwhile, William Wilbanks Noone was travelling westbound on Vista Del Cerro, and stopped for the traffic light while waiting to make a left turn onto southbound Rural Road.

19. He proceeded to make the turn, striking Mr. Wen on his bicycle.

20. Mr. Wen sustained serious head injuries, and was pronounced dead shortly after his arrival at the hospital.

21. This diagram from the Tempe Police Report demonstrates the general manner in which this collision occurred:

3

Case 2:19-cv-00819-SMB   Document 1   Filed 02/08/19   Page 4 of 10



22. There were no skid marks on the roadway. Noone did not see Wen or attempt to stop prior to striking him.

23. The investigating police officer estimated the speed at impact to be between 16.4 and 22.3 miles per hour.

### C. Pedestrian and Bicyclist Warning

24. Forward collision warning is a technology in which vehicle cameras and radar, either individually or collectively, detect objects in front of the vehicle and provide a warning to the driver of a potential impending collision.

25. Automatic Emergency Braking is a technology that uses radar and camera data to identify vehicles, pedestrians, bicyclists, and other objects that are dangers to or in danger from a vehicle equipped with Automatic Emergency Braking and apply the vehicle's brakes in a manner to avoid or mitigate a collision with identified pedestrians, bicyclists, vehicles or other objects.

26. Initially, these technologies focused on detecting other vehicles (as opposed to pedestrians or bicyclists) that posed a threat.

27. In 1996, NHTSA conducted a risk/benefit study of forward collision warning with respect to vehicles, declaring the technology to be "mature" at the time.

4

28. NHTSA concluded in 1996 that forward collision warning systems should be installed if their cost was anything less than $1,500.

29. Nonetheless, automakers, including General Motors, disregarded the recommendations of both the NHTSA and the NTSB to implement forward collision warning as soon as possible.

30. In fact, automakers disregarded forward collision warning more than virtually every other safety development, and by a significant factor, as the following chart demonstrates:



Percent of New Vehicles with Technology as Standard Equipment 15 Years After Introduction

- Forward Collision Warning: 6%
- Rear Park Assist: 15%
- Antilock Braking System (Modern): 65%
- Electronic Stability Control: 85%
- Driver's Side Airbag: 92%

31. The need to expand such collision avoidance technologies to include pedestrians and bicyclists was clear. According to a 2011 report by the Insurance Institute of Highway Safety ("IIHS"), "[i]t is estimated that as many as 3,279 fatal and 37,000 injury on-road crashes potentially could be prevented or mitigated each year if forward

SHUMWAY LAW PLLC
4647 N. 32nd St., Suite 230
Phoenix, Arizona 85018-3345
602.795.3720 ♦ 602.795.3728 Fax

collision warning/mitigation systems were designed to detect vulnerable road users such as pedestrians and bicyclists."

32. In 2015, NHTSA reported that the number of bicycle-related deaths, as a subset of pedestrian deaths, increased by approximately 13 percent over the prior year.

33. The 2011 IIHS study noted that "[p]edestrian detection systems are a specialized subset of forward collision warning/mitigation systems."

34. By 2011, automakers were installing pedestrian detection systems on some vehicles.

35. Volvo introduced a pedestrian detection system in model year 2011, which used radar combined with a camera to identify potential collisions with both pedestrians and other vehicles and motorcycles.

36. The 2011 model year Volvo pedestrian detection system warned drivers of an impending crash, and then braked automatically if the driver did not respond.

37. General Motors had installed such pedestrian/bicyclist avoidance systems in some of its 2016 model year vehicles.

38. The pedestrian avoidance system was available as an option on some trim levels of the model year 2016 Chevrolet Malibu.

39. The system available on some Chevrolet Malibus was designed for urban driving, where the driver is bombarded with sensory input from signs, lights, sounds, cars, bicycles and pedestrians.

40. According to an engineering manager with ZF TRW, the manufacturer and supplier of Chevrolet Malibu pedestrian detection system, "It's city driving." "It will operate at 20 kph (12.4 mph). Up to about 32 kph (20 mph), you should not hit the pedestrian. Up to 50 (31.1 mph), it will mitigate the impact."

41. A ZF TRW representative has stated: "In urban environments, so many people are killed every day — pedestrians and cyclists."

42. GM used this pedestrian detection technology as part of it marketing strategy to differentiate its luxury and high trim levels from its lower and base trim levels.

43. In order to get the pedestrian/bicyclist detection and avoidance systems on the 2016 Chevrolet Malibu, the purchaser had to buy one of the upper level trim levels of the Malibu.

44. To obtain the safety system on the 2016 model year Chevrolet Malibu 1LT trim level, the buyer first had to purchase an $895 "convenience and technology package" (which consisted primarily of electronic amenities), and then became eligible to purchase a $1,195 "Driver Confidence Package," which included the pedestrian collision avoidance system.

45. Upon information and belief, a pedestrian detection and automatic braking system was also available on some other GM 2016 model year vehicles.

46. Pedestrians and bicyclists who might share the roadway with the purchaser of a General Motors 2016 model year vehicle did not have any input into whether the purchaser would purchase the pedestrian/bicyclist collision avoidance technology in model year 2016 GM vehicles.

47. There are no federal regulations addressing pedestrian collision avoidance technologies.

48. Because both NHTSA and the NTSB have advocated for the prompt implementation of forward collision avoidance technology for many years, GM's installation of pedestrian detection avoidance in model year 2016 Silverado technology would have been consistent with all existing regulations, federal regulatory objectives, and policies.

49. A ZF TRW representative believed that, even though pedestrian detection technology has been reasonably available, universal adoption ultimately will take more action from safety agencies and advocates.

50. According to the representative, "It's the regulators and the (Insurance Institute for Highway Safety) that are gonna drive these [technologies]."

**D.    The Vehicle**

7

51. For model year 2016 Chevrolet Silverado pickup trucks, forward collision warning for purposes of vehicle detection was an optional feature available for purchasers.

52. General Motors LLC did not offer pedestrian detection/avoidance as either a standard or optional feature on the 2016 Chevrolet Silverado, although it was available as a feature on other models manufactured by the Company, such as the Chevrolet Malibu.

53. The Vehicle did not have any pedestrian detection/avoidance system installed.

54. Pedestrian detection and avoidance technology was technologically feasible for model year 2016 vehicles.

55. Pedestrian detection and avoidance technology was financially feasible for model year 2016 vehicles.

56. If this financially and technologically available pedestrian collision avoidance had been installed on the Vehicle, the Vehicle would not have collided with Xiaoying Wen.

57. Alternatively, if the collision had occurred, it would have been at lower speeds, such that Xiaoying Wen would not have died.

58. The benefits of pedestrian collision detection/avoidance, available for use in the Vehicle and model year 2016 vehicles manufactured by GM, far outweighed any harmful characteristics or consequences that would have resulted from use of that technology on vehicles in Model Year 2016.

59. The pedestrian forward collision avoidance technology was widely available in Model Year 2016 and vehicles not equipped with that technology were not "state of the art," as that term is used in Arizona's products liability jurisprudence.

**Claims For Relief**

**Count One**

**Wrongful Death**

60. The foregoing allegations are incorporated as if fully set forth herein.

61. As a result of GM's failure to equip the Vehicle with a forward collision avoidance system that included pedestrian detection/avoidance, the child of Plaintiff and his wife died.

62. The harmful characteristics or consequences of the Vehicle's design, without any form of forward collision avoidance technology or pedestrian collision detection/avoidance, as described in this complaint, outweighed the benefits of the design resulting from the absence of forward collision avoidance technology or pedestrian collision detection/avoidance.

63. The Vehicle was unreasonably dangerous and defective and that defect was the proximate cause of the injuries suffered by the Plaintiffs.

64. Had the vehicle been reasonably designed, Xiaoying Wen would not have died.

65. As a result of Xiaoying Wen's death, the statutory beneficiaries of Xiaoying Wen have suffered a loss of income, immense grief, and a loss of consortium.

66. Accordingly, Plaintiff and each of the statutory beneficiaries are entitled to recover for the wrongful death of Xiaoying Wen.

## **Prayer For Relief**

**WHEREFORE**, Plaintiffs pray for damages against Defendant General Motors LLC as follows:

1. For other general damages, including physical injury, lost income, pain and suffering, medical expenses, funeral and burial costs, cost of care, grief, emotional trauma, and loss of enjoyment of life.

2. For the loss of love and affection, companionship, care, protection, guidance, as well as the profound grief, sorrow, anguish, stress, shock and mental suffering already experienced and reasonably probable to be experienced in the future.

**5.** For taxable costs and pre- and post-judgment interest to the extent permitted by law.

**6.** For exemplary damages to the extent permitted by law.

9

**7.**   For attorney's fees and expenses to the extent permitted by law.

**8.**   For other relief as the Court deems just and proper.

## Jury Demand

Plaintiffs respectfully request a jury trial on all claims triable to a jury.

DATED this 8th day of February, 2019.

              **SHUMWAY LAW PLLC**

              /s/ G. Lynn Shumway
              G. Lynn Shumway

              **GHELFI LAW GROUP**
              Brent Ghelfi

              **THE CIULLA LAW FIRM, PLLC**
              Jay Ciulla

              *Attorneys for Plaintiff*

SHUMWAY LAW PLLC
4647 N. 32nd St., Suite 230
Phoenix, Arizona 85018-3345
602.795.3720 ♦ 602.795.3728 Fax